UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-96-59-B-W |
| | ) | |
| FRANK CUNNINGHAM | ) | |

**ORDER**

One evening in October 2008, Frank Cunningham drove to his wife's home and slammed a Dodge Durango into her Nissan Altima. The Court concludes that his actions constitute use of a dangerous weapon under Maine law and that Mr. Cunningham committed a class B violation of the terms of his supervised release.

**I.   STATEMENT OF FACTS**

On January 30, 2009, the Court found that Frank Cunningham violated the terms of his supervised release by driving a Dodge Durango into his wife's Nissan Altima parked at her residence. The Court found that Mr. Cunningham violated special condition number 1, which prohibits the Defendant from committing another federal, state, or local crime. Specifically, the crime was criminal mischief, a violation of 17-A M.R.S.A. § 806(1)(A). The Maine statute criminalizes the intentional, knowing, or reckless damage to the property of another, having no reasonable grounds to believe that the person has a right to do so. *Id.* Whether Mr. Cunningham's conduct constituted a Class B or Class C violation under the federal sentencing guidelines, however, remained unresolved.

The resolution of this question depends upon whether, when Mr. Cunningham operated the Durango, he was using a dangerous weapon. Maine law makes criminal mischief a Class D crime; however, under 17-A M.R.S.A. § 1252(4), if a Class D crime was committed "with the

use of a dangerous weapon," the sentencing class for purposes of Maine state law is raised one class. Thus, if Mr. Cunningham used the Durango as a dangerous weapon, the Class D criminal mischief would be raised to a Class C crime.

This change in state classification causes a change in the federal sentencing guideline range. If Mr. Cunningham committed a Class D crime, he would be subject to a state sentence of "less than one year," but if he committed a Class C crime, he would be subject to a state sentence "not to exceed 5 years." 17-A M.R.S.A. § 1252(2)(C)-(D). These potential state sentences result in different federal guideline sentences. Conduct constituting a state offense punishable by imprisonment of one year or less is a grade C violation; whereas, conduct constituting a state offense punishable by imprisonment exceeding one year is a grade B violation. U.S.S.G. § 7B1.1(a)(2)-(3). For Mr. Cunningham, who carries a criminal history category of VI, the difference in the guideline range is eight to fourteen months for a grade C violation and twenty-one to twenty-seven months for a grade B violation. U.S.S.G. § 7B1.4(a). Even though the guidelines are purely advisory for revocation purposes, the Court concluded that given the disparity in the ranges, it was appropriate to resolve the grade of violation before imposing sentence.

## II.  DISCUSSION

Maine law defines "use of a dangerous weapon":

> 'Use of a dangerous weapon' means the use of a firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which, in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.

17-A M.R.S.A. § 2(9)(A). It is well established that "[a] motor vehicle can be used as a dangerous weapon" within the meaning of 17-A M.R.S.A. § 2(9)(A). *State v. York*, 2006 ME 65, ¶ 8, 899 A.2d 780, 783; *see State v. Seymour*, 461 A.2d 1060, 1061 (Me. 1983); *State v. Jones*,

405 A.2d 149, 151 (Me. 1979); *State v. Thurlow*, 387 A.2d 22 (Me. 1978). The question is whether the Defendant used the automobile in this fashion.

Maine law does not unequivocally resolve this question. In *State v. Pierre*, the Supreme Judicial Court of Maine affirmed a conviction for reckless conduct with the use of a dangerous weapon when, after a dispute with her husband, a woman drove her car into the front wall of her apartment several times. 649 A.2d 333, 334 (Me. 1994). In upholding the conviction, the *Pierre* Court noted that "at least two of the young children were near the front of the apartment where the car struck the building." *Id.* Comparing reckless conduct to use of a dangerous weapon, *Pierre* states that the "State must prove that the object was capable of producing death or serious bodily injury." *Id.* The Court concluded that the State had convinced the jury that Ms. Pierre had "used the automobile in a manner capable of producing death or serious bodily injury." *Id.*

Maine law resolves some of the questions presented in this matter. First, Maine law confirms that the act of driving a motor vehicle into another vehicle can constitute use of a dangerous weapon. *York*, 2006 ME 65, ¶ 3, 899 A.2d at 781-82 (defendant's vehicle made contact with the victim's vehicle); *Seymour*, 461 A.2d at 1060 (defendant rammed victim's vehicle from behind); *Jones*, 405 A.2d at 150 (defendant's vehicle collided with the left front of the victim's vehicle).

Second, Maine caselaw clarifies that the use of a dangerous weapon does not require the defendant to actually kill or seriously harm someone. Indeed, in *Pierre*, *York*, *Seymour*, *Jones*, and *Thurlow*, each defendant was found guilty of use of a dangerous weapon in the operation of a motor vehicle, but there is no mention in any of the opinions that someone was actually physically injured. The absence of actual bodily injury suggests that whether the defendant used a motor vehicle as a dangerous weapon is not a retrospective assessment. In short, the question

is not whether the defendant's actions actually did cause death or serious bodily injury, but whether the conduct was "capable of producing death or serious bodily injury." 17-A M.R.S.A. § 2(9)(A). Thus, Mr. Cunningham gains little by emphasizing the lack of evidence "to suggest that there was any risk of serious bodily injury or death to another person as no one was in the Altima that was struck, nor was anyone in close proximity to the vehicle at the time of the collision." *Def.'s Mem. Regarding Sentencing* at 2 (Docket # 121).

On this point, the interplay between criminal mischief and aggravated criminal mischief is instructive. The statute defines criminal mischief as damaging or destroying the property of another having no reasonable grounds to believe that the person has the right to do so. 17-A M.R.S.A. § 806(1)(A). The criminal mischief statute does not require physical harm to another. But, if in damaging the property of another, the defendant recklessly endangers human life, he will have committed the crime of aggravated criminal mischief. 17-A M.R.S.A. § 805(1)(D). Thus, "use of a dangerous weapon" requires only that the action be "capable of producing death or serious bodily injury"; whereas, "aggravated criminal mischief" requires that the action "thereby recklessly endangers human life." If the Maine Legislature had intended to require that "use of a dangerous weapon" actually put another person in danger of serious bodily injury or death, it could have done so.

Here, there is sufficient evidence that from a prospective, not retrospective view, Mr. Cunningham's manner of using the Durango was capable of producing death or serious bodily injury. The incident took place at night in the driveway of a residential yard. Mr. Cunningham drove the Durango hard enough against the Altima to cause significant damage. It also took place against the backdrop of a difficult domestic relationship between Mr. Cunningham and his wife. When Mr. Cunningham drove into his wife's residential driveway that evening, he knew

4

that both his wife and her teenage son were likely somewhere in the vicinity, but there is no evidence that he knew precisely where they were. He took the risk that no one was close enough to the Altima to be harmed by a collision. It is his willingness to act in a manner that is capable of producing death or serious bodily injury that is sufficient under Maine law to constitute use of a dangerous weapon.

The fact that no one turned out to be in the Altima, that no one was immediately behind the Altima, and that no one was actually injured is beside the point. Using a motor vehicle at night as a battering ram to slam into a vehicle parked in a residential yard is using the vehicle "in a manner capable of producing death or serious bodily injury" and fits well within the statutory definition.

## III. CONCLUSION

The Court concludes that Mr. Cunningham has violated special condition number 1 of the conditions for his supervised release; that in committing the crime of criminal mischief, he used a dangerous weapon within the meaning of Maine law; and, that he committed a class B violation with a guideline sentence range of between twenty-one and twenty-seven months.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2009